DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| AVERRICIA WILLIAMS and LUNSFORD A. WILLIAMS,<br><br>                              Plaintiffs,<br><br>                                 -v.-<br><br>ORIENTAL BANK (formerly BANK OF NOVA SCOTIA), and DOES 1-10<br><br>                              Defendants. | 1:20 Civ. 26 (CAK)<br><br>**OPINION AND ORDER** |

**MEMORANDUM OPINION AND ORDER**

CHERYL ANN KRAUSE, Circuit Judge, sitting by designation.

THIS MATTER is before the Court upon Defendant Oriental Bank's Motion to Dismiss (Dkt. No. 9). For the reasons set forth below, this Court will grant Oriental Bank's Motion to Dismiss as to Plaintiffs' federal claims and, because dismissing these claims will eliminate any claims that provide original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' remaining territorial law claims and will instead remand them to the Superior Court of the Virgin Islands for further proceedings.

I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

---

[1] In considering a motion to dismiss, the Court must "accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and . . . construe them in a light most favorable to [the plaintiff]." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). Thus, these facts are drawn primarily from Plaintiffs' First Amended Complaint.

1

Plaintiffs Averricia Williams and Lunsford A. Williams (Plaintiffs or the Williamses) bring this action against their mortgage lender and servicer, Defendant Oriental Bank,² alleging that it violated Virgin Islands and federal law by overcharging them on premiums for force-placed insurance³ on their property, even though the force-placed insurance did not cover their house. *See generally* First Amended Complaint ("FAC"). The facts supporting their claims are as follows.

In October 1999, the Williamses financed the purchase of a home in St. Croix with a mortgage from the Bank of Nova Scotia. Dkt. No. 10-1 (Mortgage Agreement). The Mortgage Agreement required the Williamses to maintain insurance on the property and provided that if they failed to do so, the mortgagee "may, but shall not be required, to obtain such coverage with insurance companies of its choosing and make the required premium payment together with any interest and penalties then owing." Mortgage Agreement ¶¶ 6.1, 6.3.

Plaintiffs allege that they had force-placed insurance through their mortgage for approximately 20 years. FAC ¶ 8. They aver Oriental Bank "place[d] the insurance and

---

² Oriental Bank is the successor in interest to the Bank of Nova Scotia, operating as Scotiabank, which originated the mortgage at issue in this case. First Amended Complaint ¶¶ 5, 6. Plaintiffs' mortgage loan was transferred to Oriental Bank on June 1, 2020, after OFG Bancorp, the financial holding company of which Oriental Bank is a subsidiary, acquired all branches of Scotiabank in Puerto Rico and the U.S. Virgin Islands. *Id.* ¶ 5. Although the Bank of Nova Scotia allegedly took some of the actions described in the Amended Complaint, the Court adopts Plaintiffs' shorthand of referring to the Bank of Nova Scotia as its successor in interest, Oriental Bank, for the sake of simplicity.

³"Insurance is force placed when a contract holder (here [Oriental Bank]) compels a borrower [here Plaintiffs] to maintain … insurance and charges the premium to the borrower." *Jenkins v. Heintz*, 124 F.3d 824, 827 (7th Cir. 1997).

2

t[ook] premiums" greater than the rate it paid for the insurance "from the Plaintiffs and other customers, so it could collect kickbacks or commissions." FAC ¶ 8. These rates, according to Plaintiffs, "were not arrived at on a competitive basis, and were well in excess of those that could have been obtained in the open market, because such kickbacks are generally [a percentage of] the cost of the force-placed insurance," inducing banks, including Oriental, "to purchase the highest priced force-placed insurance policy on a non-competitive basis that it can" to inflate "its commission or kickback." FAC ¶ 9.

In 2017, Plaintiffs' home was damaged by Hurricanes Irma and Maria. FAC ¶ 10. Plaintiffs attempted to contact Oriental Bank, which "gave [them] the complete runaround until on or about April 24, 2018." FAC ¶ 12. At that point, they allege, "Attallah Bertrand-Rogers of Scotiabank's Mortgage Unit informed Plaintiffs that they had no insurance on the dwelling, and only on the land itself, and that the bank's computer had inadvertently kicked out the insurance on the dwelling and instead had it assigned to the real property." FAC ¶ 12. Plaintiffs allege this was the first time they had heard about this "error" and, given that their mortgage payments had remained consistent, they had no reason to suspect anything had changed with respect to the insurance on their home. FAC ¶ 12. Plaintiffs also allege that Oriental Bank had "negligently selected an insolvent insurer." FAC ¶ 13.

While the Williamses recognize that Oriental Bank was not obligated to place any insurance on their home, they allege that Oriental "was aware of the fact that Plaintiffs relied on [Oriental] to do so." FAC ¶ 14. Because of Oriental's alleged error and/or negligence, Plaintiffs received no funds from insurance and were unable to repair the damage caused by the hurricanes. FAC ¶ 15. Additionally, as they depended on income

3

from renting their home to pay their mortgage, they fell behind on their payments and Oriental Bank is now foreclosing on the mortgage. FAC ¶¶ 15–16.

Plaintiffs filed this action in the Superior Court of the Virgin Islands on March 20, 2020, seeking compensatory and punitive damages, as well as costs and fees. (Dkt. No. 1-1.) Oriental Bank removed the case to this Court on the basis of federal question and pendent jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1441(a) on May 28, 2020 (Dkt. No. 1) and subsequently moved to dismiss the Complaint (Dkt. No. 3). The Williamses amended their complaint on July 21, 2020 (Dkt. No. 8). The Amended Complaint alleged claims for (1) breach of express and implied contract, (2) estoppel, (3) negligence, (4) fraud, (5) illegal tying arrangement in violation of the Bank Holding Company Act (BHCA), 12 U.S.C. § 1972, (6) breach of fiduciary duties, (7) breach of implied covenant of good faith and fair dealing, (8) violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*, (9) unjust enrichment, (10) tortious interference with a business relationship, (11) conversion of chattels or personal property, and (12) intentional or negligent infliction of emotional distress. Oriental Bank's Motion to Dismiss the Amended Complaint (Dkt. No. 9), filed on August 21, 2020, is now fully briefed and ripe for decision.

## II.   DISCUSSION[4]

---

[4] The Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1441(a). To withstand a motion to dismiss, "a complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Mayer v. Balichick*, 605 F.3d 223, 229 (3d Cir. 2010) (internal quotations and citation omitted). Thus, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A.      Exhibits Attached to Oriental Bank's Motion to Dismiss

Many of the arguments Oriental Bank makes in its motion to dismiss depend on the contents of documents it attaches as exhibits to the motion. These documents include the Mortgage Agreement (Exhibit A), Notices of Insurance (Exhibit B), and Escrow Disclosure Statements (Exhibits C and D). The Court must therefore first determine whether it can properly consider these documents at this procedural juncture before turning to the substance of Oriental Bank's arguments.

In deciding a motion to dismiss for failure to state a claim, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Typically, a court may not consider extraneous evidence submitted by the defense without converting the motion to dismiss into a summary judgment motion because it must give the plaintiff an opportunity to respond. *Id.* There is an exception to this rule, however, for "undisputedly authentic documents [upon which] the complainant's claims are based." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp.*, 998 F.2d at 1196). A claim is "based on" a document if the document is "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis removed) (citation

---

Instead, a complaint "must contain sufficient factual allegations so as to state a facially plausible claim for relief." *Mayer*, 605 F.3d at 230. "A claim possesses such plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations omitted).

omitted). This exception is permitted because "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (citation omitted).

Oriental Bank claims the exhibits it has attached to its motion fall within this exception, as the Mortgage Agreement is a publicly recorded document that is also explicitly relied on in the Amended Complaint, and the insurance notices and escrow disclosures are integral to the Amended Complaint because they are "the only possible source for Plaintiffs' knowledge that their escrow account was ever charged for force placed insurance premiums." Reply Br. 3 (emphasis removed). Plaintiffs counter by arguing that the document Oriental Bank labels as the Mortgage Agreement does not constitute the totality of the documents that represent the "mortgage" referenced in the Amended Complaint,[5] and they dispute the authenticity of the insurance notices and escrow disclosures. Opp. 3–7.

There can be no question that many of the claims Plaintiffs have brought are "based upon" the Mortgage Agreement. FAC ¶¶ 18–22, 42–45. Nor have Plaintiffs disputed the authenticity of the version of the agreement attached to the Motion to Dismiss, *see* Opp. 6–7, or the fact that it is a public document. The Court may therefore consider the Mortgage Agreement in deciding the Motion to Dismiss, although it will bear in mind

---

[5] Among other things, Plaintiffs point out that the Mortgage Agreement does not contain a "merger clause . . . stating that the entire agreement is contained within . . . that document or any provision stating that [the mortgage agreement] could only be amended in writing following a particular procedure for such amendments." Opp. 7 n.5.

6

Plaintiffs' argument that its terms may not represent the entirety of the agreement between the parties. *See Claxton v. Oriental Bank*, No. 19-cv-0069 (KAJ), 2022 WL 3683800, at *3 (D.V.I. Aug. 25, 2022) (holding a similar mortgage agreement could be relied upon in deciding a motion to dismiss because plaintiff claimed breach of the mortgage agreement and because "section 2362 of the Virgin Islands Code requires that mortgages be publicly recorded."); *United States v. Real Est.-Land Title & Tr. Co.*, 102 F.2d 582, 586 (3d Cir. 1939), *aff'd*, 309 U.S. 13 (1940).

The insurance notices and escrow disclosures are a different matter for two reasons. First, they are neither "integral to [nor] explicitly relied upon in the complaint," and second, Plaintiffs have challenged their authenticity. *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis removed) (citation omitted). Oriental Bank's argument that Plaintiffs could only have learned about the force-placed insurance from these documents falls flat, as it is conceivable that the Williamses became aware of the force-placed insurance from other avenues (including, for example, speaking with customer representatives or accessing the information online). To find otherwise would be to improperly deny Plaintiffs' the opportunity to respond with their own evidence. In any event, the fact that Plaintiffs have disputed the authenticity of these documents ends the matter at this stage. Opp. 3–6. The Court will therefore decline to consider the insurance notices and escrow disclosures in deciding the motion to dismiss.

    B.    <u>Plaintiffs' Federal Claims</u>

        1.    *Illegal Tying Arrangement under 12 U.S.C. § 1972 (Count Number 5)*

To state a tying claim under the BHCA, 12 U.S.C. § 1972, a plaintiff must allege the defendant has violated the statute's three elements.[6] These elements consist of: (1) "an anti-competitive tying arrangement"; (2) that is neither "usual or traditional in the banking industry"; and (3) that "confer[s] a benefit on the bank." *Highland Cap., Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 565 (6th Cir. 2003). Here, Oriental Bank argues that Plaintiffs' tying claim must be dismissed because Plaintiffs have failed to plausibly plead—and cannot as a matter of law plead—the existence of an anti-competitive tying arrangement that is neither usual nor traditional in the banking industry. Mot. to Dismiss 15–16.

According to Oriental Bank, Plaintiffs failed to plead the existence of a tying claim because the allegations in the First Amended Complaint and the terms of the Mortgage Agreement establish that Plaintiffs were never required "to obtain insurance from a specific insurance company, or otherwise required … to purchase a specific product as a condition of receiving the mortgage loan." *Id*. at 16. Likewise, Oriental Bank contends that Plaintiffs cannot establish that the requirement to purchase insurance on their property was unusual or nontraditional because this insurance requirement "is well within the scope of the traditional-banking-practices exception to section 1972." *Id*.

---

[6] Although the Third Circuit has not expressly set forth the elements of a BHCA tying claim, the consensus among courts is that the three elements are: (1) the existence of a tying arrangement; (2) which is not usual or traditional in the banking industry; and (3) which confers a benefit on the bank. *See, e.g., Tovar v. U.S.P.S. v.*, 3 F.3d 1271, 1278 (9th Cir. 1993); *Nordic Bank PLC v. Trend Grp., Ltd.*, 619 F. Supp. 542, 552, 556–57 (S.D.N.Y. 1985); *New England Co. v. Bank of Gwinnett Cnty.*, 891 F. Supp. 1569, 1573 (N.D. Ga. 1995).

(quoting *Bank of Nova Scotia v. Roy*, No. 2010-29, 2013 WL 684452, at *11 (D.V.I. Feb. 25, 2013)).

In response, Plaintiffs assert, without much elaboration, that they have "adequately plead[ed] all three elements of a BCHA anti-tying claim." Opp. 15. As for the existence of a tying arrangement, Plaintiffs contend that they have "at a minimum" alleged Oriental Bank furnished services to plaintiffs based on some "condition or requirement that plaintiffs shall not obtain some other credit, property, or service from a competitor of such bank." Opp. 16 (citing FAC ¶¶ 8, 9, 31, 34, 52, 53, 61). Notably, however, Plaintiffs do not explain the particular conditions or requirements imposed by Oriental Bank through the Mortgage Agreement or otherwise. *Id.* And as for the unusual nature of Oriental Bank's alleged tying arrangement, Plaintiffs contend the allegations in the FAC regarding Oriental Bank's alleged kickback scheme are sufficient, for the purposes of deciding a motion to dismiss, to render the Mortgage Agreement's insurance requirement unusual or untraditional. *Id.* Neither argument is convincing, especially in view of previous opinions from this Court.

Despite Plaintiffs' assertion otherwise, Plaintiffs have not pleaded the existence of a tying arrangement. Nowhere in the First Amended Complaint have they alleged any facts that Oriental Bank, or the Mortgage Agreement itself, "forced the [P]laintiff[s] into the purchase of a tied product that the [Plaintiffs] did not want at all, or might have preferred to purchase elsewhere on different terms." *Claxton*, 2022 WL 3683800, at *4 (citation omitted). Nor could they have, given that under the terms of the Mortgage

9

Agreement,[7] Plaintiffs were free to obtain insurance through any company or association, so long as that company or association was "responsible, reputable[,] … financially sound [and] … acceptable to [Oriental Bank]," and so long as the policy "cover[ed] loss or damage … on a comprehensive basis from all risks."  Mortgage Agreement § 6.1.

At most, the FAC pleads that "Oriental Bank … furnished services to the Plaintiffs on the condition or requirement that the Plaintiffs shall not obtain some other credit, property, or service from a competitor of such bank and/or bank holding company."  FAC ¶ 35.  But this allegation is nothing more than a threadbare recitation of the elements of a tying claim under 12 U.S.C. § 1972, supported by conclusory statements.  *Compare* FAC ¶ 35 *with* 12 U.S.C. § 1972(1)(E).  Such generic recitals "do not suffice" and fail to allow this Court, as is necessary to survive a motion to dismiss, to "draw the reasonable inference that [Oriental Bank] is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Nor have Plaintiffs plausibly alleged that the requirement to obtain insurance over their mortgaged property was an unusual or non-traditional banking practice.  As this Court has previously explained, "[r]equiring mortgage protection is well within the scope of the traditional-banking-practices exception to section 1972."  *Claxton*, 2022 WL 3683800, at *5 (citation omitted).  And Plaintiffs' argument that "the tying arrangement

---

[7] Indeed, given that the Mortgage Agreement only allowed for Oriental Bank to purchase force-placed insurance "*after* [Plaintiffs] declined to do so," Plaintiffs have failed to plead an "essential characteristic" of a tying arrangement claim.  *Claxton*, WL 3683800, at *4 (emphasis in original).

was implemented through the use of kickbacks which are not usual in the banking industry," Opp. 16, has been rejected in a similar context, *see Claxton*, 2022 WL 3683800, at *5, and depends on Plaintiffs having adequately pleaded a tying arrangement, which they have failed to do.[8]

In sum, because Plaintiffs have failed to plausibly allege the first and second elements of a BHCA tying claim under 12 U.S.C. § 1972, their BHCA tying claim will be dismissed.

### 2. *Violation of RESPA (Count 8)*

Plaintiffs allege that Oriental Bank violated RESPA by "collective kickbacks or commissions related to [the force-placed] insurance" it obtained for their property for "approximately 20 years," FAC ¶ 8, dating back to 1999. Because Plaintiffs did not file their complaint until 2020, Oriental Bank contends Plaintiffs RESPA claim is barred by the statute of limitations. That is correct.

Plaintiffs rely on the separate-accrual rule applicable to § 2607(a) claims, Opp. 19–20, such that "each kickback has its own limitation period," under RESPA which begins to run "each time [a defendant] takes the discrete act of giving or receiving a kickback," *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 707 (3d Cir. 2019). By their logic, each time

---

[8] The two cases on which Plaintiffs rely are inapposite. *Johnson v. Matrix Fin. Servs. Corp.* did not involve the BHCA at all and discussed kickbacks only under RESPA and Illinois state law. 820 N.E.2d 1094, 1099–1106 (Ill. App. 1 Dist. 2004). And in *In re Wells Fargo Ins. Mktg. and Sales Pracs. Lit.*, the court dismissed the plaintiffs' tying claim because—just as here—the bank had purchased collateral protection insurance only after the plaintiffs themselves received their loans and refused to do so. No. SAML 17-02972 AG (KESx), 2018 WL 9536803, at *7 (C.D. Cal. Dec. 14, 2018).

Oriental Bank force-placed insurance it allegedly did so to accept a bribe, *see* FAC ¶ 8, Oriental Bank last force-placed insurance on Plaintiffs' property in April 2018, *id*. ¶ 12, so under the sperate-accrual rule, Plaintiffs' 2020 complaint was filed within the "thee-year statute of limitations," Opp. 18, n. 17, applicable to RESPA. The fallacy is that the applicable limitations period for a § 2607(a) claim is not three years but one, *see* 12 U.S.C. § 2614. So even under the separate-accrual rule, Plaintiffs' complaint is untimely.

Plaintiffs also argue, more generally, that Oriental Bank is not permitted to raise a statute of limitations defense in its Motion to Dismiss because that defense is premised on Exhibits C and D, which the Court may not consider in this procedural posture. Opp. 17. But the Court need not and does not consider these exhibits to conclude Plaintiffs' RESPA claim is time-barred. *Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (acknowledging that the Third Circuit "permit[s] a [statute of] limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.") (citation omitted).[9] For the reasons just explained, the untimeliness of Plaintiffs' RESPA

---

[9] Plaintiffs have not argued that the statute of limitations was equitably tolled by any misconduct on Defendant's part, nor does the Amended Complaint contain factual allegations that would support equitable tolling. *See Nix v. Option One Mortg. Corp.*, No. 05-cv-03685, 2006 WL 166451, at *9 (D.N.J. Jan. 19, 2006) (dismissing a plaintiff's claim for failure to raise equitable tolling as a defense to defendant's motion to dismiss); *Bey v. DaimlerChrysler Servs. of N. Am., LLC*, No. 04-cv-6186, 2005 WL 1630855, at *4 (D.N.J. Jul. 8, 2005) (dismissing claim as time-barred where (1) plaintiff failed to raise equitable tolling in response to the defendant's motion to dismiss and (2) plaintiff's complaint did not contain any factual allegations to support an equitable tolling defense); *Davitt v. Open MRI of Allentown, LLC*, No. 03-cv-5612, 2003 WL 23162429, at *6 (E.D. Pa. Dec. 17, 2003) (dismissing claim as time-barred where plaintiff failed to adequately allege the requirements of equitable tolling in her complaint or in her opposition to the defendants'

claim is apparent from the face of the FAC, so the Court will dismiss the claim on statute of limitations grounds.

### C. Plaintiffs' Non-Federal Claims

Having dismissed Plaintiffs' BHCA and RESPA claims (Counts 5 and 8), the Court is left with Plaintiffs' claims for breach of contract, estoppel, negligence, fraud, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious interference, conversion, and intention or negligence infliction of emotional distress (Counts 1, 2, 3, 4, 6, 7, 9, 10, 11, and 12, respectively) each brought under Virgin Islands, rather than federal, law. Where, as here, a "district court has dismissed all claims over which it has original jurisdiction," it may exercise its discretion and "decline to exercise supplemental jurisdiction" over the remaining territorial law claims. 28 U.S.C. § 1367(c). Doing so requires this Court to weigh "the values of judicial economy, convenience, fairness, and comity." *Cargnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Here, none of these values weigh in favor of exercising pendent jurisdiction over Plaintiffs' remaining claims.

Start with judicial economy, which measures the amount of time and energy the parties have invested in litigating a case. *See In re Paoli R.R. Yard PCB Lit.*, 35 F.3d 717, 737 (3d Cir. 1994). Though some discovery has been conducted here,[10] *see, e.g.*, Dkt. Nos.

---

motion to dismiss). Nor could the discovery rule salvage their claim because "Congress specifically provided that the limitations period" for RESPA claims "begins to run on 'the date of the occurrence of the violation.'" *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 162–63 (3d Cir. 2016) (quoting 12 U.S.C. § 2614)).

[10] Even if the parties had engaged in extensive discovery, this would not weigh in favor of exercising supplemental jurisdiction where, as here, "the cost expended [in such

13

43–58, "[t]he fact that some investment of time has already been made does not foreclose a district judge from exercising discretion in favor of not hearing a pendent state claim," *Shaffer v. Bd. of Schl. Dirs. of Albert Gallatin Area Schl Dist.*, 687 F.2d 718, 723 (3d Cir. 1982). What matters is whether there has been substantial investment made, such as where the parties in a case have litigated all the way to trial, *see Lentino v. Fridge Emp. Pans, Inc.*, 611 F.2d 474, 480 (3d Cir. 1979), or where there have been "years of federal proceedings," *In re Paoli R.R. Yard PCB Lit.*, 35 F.3d at 737. As this case has only proceeded to the motion to dismiss stage, there is no overriding interest in judicial economy that favors the exercise of pendent jurisdiction. *See, e.g.*, *Smith v. ZENECA Inc.*, 820 F. Supp. 831, 834 (D. Del. 1993) ("Because this case is only at the motion to dismiss stage, the Court finds no overriding interest of judicial economy or convenience."); *Hall-Wadley v. Maint. Dept.*, 386 F. Supp. 3d 512, 519 (E.D. Pa. 2019) (refusing to exercise supplemental jurisdiction over state-law claims where "case has not progressed … past the motion to dismiss stage.").

The second value the Court must consider—the convenience of the federal forum—likewise does not militate in favor of retaining jurisdiction. As Plaintiffs' surviving claims are governed by Virgin Islands law, "any additional factual research [on these claims] would have to be conducted" in either fora, so dismissal would not cause undue inconvenience to the litigants. *Parker & Parsley Petrol. Co. v. Dresser Industries*, 972

---

discovery] is not wasted because the discovery can be used in … local proceedings." *Gautier-James v. Hovensa*, LLC, No. 2006-106, 2023 WL 4532194, at *4 (D.V.I. July 12, 2023).

14

F.2d 580, 587–88 (5th Cir. 1992).  At most this factor is in equipoise because this Court and the territorial court from which this case was removed are both located in St. Croix. *See Jhang v. Kim*, No. 13-6359, 2021 WL 2550861, at *7 (E.D. Pa. June 21, 2021); *Turner v. Corr. Corp. of America*, 56 F. Supp. 3d 32, 37 (D.D.C. 2014); *Roxse Homes, Inc. v. Adams*, 83 F.R.D. 398, 405 (D. Ma. 1979) ("This factor bears no significant weight … since the most likely alternative forum would be in the same community.").

Turning to the third consideration, fairness, remanding Plaintiffs' non-federal claims back to the Superior Court of the Virgin Islands would not be unfair to Plaintiffs, who originally sought for this lawsuit to proceed in that venue.[11]  Nor would it be unfair to Oriental Bank as it "knowingly risked [remand] of [Plaintiffs] pendent claims when [it] [removed] … and invoked the Court's discretionary supplemental jurisdiction power." *Annulli v. Pannikkar*, 200 F.3d 189, 203 (3d Cir. 1999) *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000).

---

[11] To the extent any argument could be made that it would be unfair to refrain from exercising pendent jurisdiction over Plaintiffs' territorial claims given that, upon dismissal, these claims may be barred by limitations, such an argument fails to persuade. This Court is not dismissing Plaintiffs' territorial law claims so that they would have to be refiled; rather, it is remanding them to the Superior Court.  *See Carnegie-Mellon Univ.*, 484 U.S. at 351–52 ("[A] remand generally will be preferable to a dismissal when the statute of limitations on the plaintiff's state-law claims has expired before the federal court has determined that it should relinquish jurisdiction over the case" because, unlike remand, "a dismissal will foreclose the plaintiff from litigating his claims.").  But even if these claims had to be refiled, Congress has cured any potential limitations problem through statutory tolling of claims that are before a federal court on the basis of supplemental jurisdiction for the period "while the claim is pending and for a period of 30 days after it is dismissed."  28 U.S.C. § 1367(d).  So the effect that dismissal may have on the timeliness of Plaintiffs' claims is not a reason to exercise pendent jurisdiction here.  *See Hedges v. Musco*, 204 F.3d 109, 123–24 (3d Cir. 2000).

Lastly, as to the fourth value, "comity favors allowing the [territorial] court to hear [Plaintiffs territorial] law claims." *Id*. Indeed, by allowing Plaintiffs' territorial claims to proceed in Superior Court, this Court "will avoid guessing how [Virgin Islands] courts would interpret [Virgin Islands] law." *Wheeler v. City of Philadelphia*, 367 F. Supp. 2d 737, 749 (E.D. Pa. 2005). This is particularly appropriate given the potentially complex issues of territorial law in this case. *See Combs v. Homer-Center Schl. Dist.*, 540 F.3d 231, 254 (3d Cir. 2008) (declining to exercise supplemental jurisdiction over pendent state law claim where claim raised a "potentially complex issue of State law.").

Altogether, then, the values of judicial economy, convenience, fairness, and comity counsel against the exercise of pendent jurisdiction, so, pursuant to 28 U.S.C. § 1447(c), the Court will remand Plaintiffs' remaining territorial law claims to the Superior Court of the Virgin Islands.

### III. CONCLUSION

For the reasons discussed above, the Court DENIES Defendants' Motion to Dismiss, GRANTS the Motion in part, and REMANDS this case to the Superior Court of the Virgin Islands for all further proceedings.

Dated:   August 17, 2023

*(signature)*
_____
CHERYL ANN KRAUSE
United States Circuit Judge